In the Matter of the Estate of ANTON MEISTER, Deceased. ELSIE M. FREY, as Successor Committee of the Person and Property of MARIE MEISTER, Appellant; EUGENE B. MCAULIFFE et al., as Preliminary Executors of ANTON MEISTER, Deceased, et al., Respondents.

First Department, November 27, 1973.

*Frank H. Gordon* of counsel (*James N. Blair* with him on the brief; *Rogers Hoge & Hills,* attorneys), for appellant.

*Edward F. Vaughan* of counsel (*James N. Vaughan* with him on the brief; *Vaughan & Lyons,* attorneys), for Eugene B. McAuliffe and another, respondents.

*Donald N. Ruby* of counsel (*Gerald C. Goldstein* with him on the brief; *Wolf Popper Ross Wolf & Jones,* attorneys), for Polish beneficiaries and remaindermen, respondents.

STEUER, J. The deceased left a daughter who is incompetent. The appellant is her committee. During their lifetimes the deceased and his wife entered into a separation agreement one of the terms of which was that the deceased would make adequate provision in his will for the support and maintenance of the daughter. Pursuant to that obligation his will provides that the income from a certain piece of real estate be devoted by the testamentary trustees to that purpose. The real estate has since been sold for $85,000 and the annual income from the proceeds is about $5,200. The assets of the estate, which has been in litigation since 1965, are variously estimated as being from $1,300,000 to $10,000,000. Deeming the provision for the incompetent's support to be inadequate, the committee instituted an action against the estate.

The attorneys for the interested parties met for the purpose of arriving at a settlement. The meeting took place at the Surrogate's Court and was attended by attorneys for the committee, for the executors and for the beneficiaries of the trusts created by the will. The latter are residents of Poland. A charitable beneficiary was not represented. The meeting was also attended by a law assistant to the Surrogate. After lengthy negotiations the terms of a stipulation of settlement were arrived at and dictated to a court stenographer. The import of the stipulation was that the trust for the benefit of the daughter would be increased to $300,000 at the expense of the trusts for the other beneficiaries, including the charity. However, the stipulation does not provide that the action by the committee is thereby settled. All that was agreed upon was that the proposed settlement would be recommended by the attorneys to their respective clients and then reduced to writing and submitted for approval to the Surrogate and the Supreme Court in Westchester County, which had jurisdiction of the incompetent's person and estate.

Sometime in April, 1972 the attorneys for the executors prepared a written stipulation for settlement which was approved by all parties, but authorization to sign was not received from the Polish beneficiaries. On June 19, 1972, the attorney for

the committee advised the Surrogate that the stipulation had not been signed and pointed out that the inducement for settlemen was that the added income would enable the incompetent to leave Manhattan State Hospital, where she was presently an inmate, to be cared for in more suitable surroundings. He urged the immediate execution and effectuation of the stipulation. Nothing was done. After waiting for two more months, the committee, on August 29, 1972, advised the Surrogate that she would not go forward with the settlement. Nine days later the stipulation was executed by all parties except the committee, who formally refused to do so.

By this application the executors sought to compel the committee to acknowledge the settlement by signing it. The Surrogate changed the effective date of the agreement to February 11, 1972, the supposed date of the dictated terms, and directed the committee to sign it.

The reasoning of the Surrogate is that on that date the parties arrived at a fair settlement in open court, subject only to the approval of the respective courts having jurisdiction. The difficulty is that this is just not the fact as revealed by the record. Leaving aside the question of whether the stipulation was one arrived at in " open court ", which at best is very doubtful (*Matter of Dolgin Eldert Corp.*, 31 N Y 2d 1), the stipulation does not settle anything. It merely records what the attorneys will recommend to their respective clients and leaves to the latter whether they will agree or not. The executors argue that the stipulation was the agreement and all that remained was to reduce it to suitable form. This is belied by both their expressions and conduct. On February 11, 1972, their counsel advised them that " Popper [attorney for the Polish beneficiaries] reserved the right to get approval from his clients and of course I reserved the right to get approval from Palmer [the charitable beneficiary] and yourselves." Furthermore, they did not fix as the effective date of the stipulation the date of the negotiations but the date of the drafted agreement. Nor have they to this date sought to implement the supposed settlement by tendering any income in accord with its terms.

It is not for this court to decide whether the committee should now agree to the settlement. It is patent that before there was any agreement the committee withdrew her consent previously given.

The decree of the Surrogate's Court (DiFalco, S.) dated February 6, 1973, should be reversed on the law and on the facts and the application denied with costs to all parties filing briefs payable out of the estate.

McGivern, J. P. (dissenting). I believe the Surrogate was correct in approving the "Agreement of Compromise" made in open court, February 11, 1972, prepared painstakingly in a text agreeable to and approved by all the attorneys for all the parties appearing, and executed by all the appearing respondents and their attorneys, and preceded by months of negotiation.

Now the appellant balks, not on the ground of nonagreement, but because subsequent rumination leads her to conclude she miscalculated and should have made a better deal. Six months after the compact, her attorney still spoke of the settlement as a binding agreement. Said Mr. Marks in his letter to the Surrogate, June 19, 1972 " an agreement was reached among all parties to settle the above action by increasing the principal of the trust created pursuant to her father's will for the benefit of Marie Meister to the sum of $300,000, with certain provisions for invasion of principal." Thereafter, the approval of all the parties, which was but a condition subsequent, was obtained. I do not think, in law or equity, her belated and unilateral repudiation, should be sanctioned by the courts.

And I believe approval herein comports with CPLR 2104, as explicated by *Matter of Dolgin Eldert Corp.* (31 N Y 2d 1). If anything, we have here the very elements of estoppel presaged by the *Dolgin* opinion (p. 11): " Quite different might be the situation, not involved now, where the facts of the agreement are undisputed and all the elements for an estoppel, including reliance, are present (see *Gass* v. *Arons,* 131 Misc. 502, *supra;* cf. *Golden Arrow Films* v. *Standard Club,* 38 A D 2d 813, mot. for lv. to app. granted 30 N Y 2d 487)." And the estoppel herein would be based on a reliance of mutuality of consent relative to an undisputed agreement, entered into and approved by all the litigants, primarily the appellant. Further, there was the relinquishment of rights; and the efforts directed to the procural of consents founded on appellant's initial approval of the agreement at the time of the stipulation.

Lastly, I would affirm, on pragmatic grounds, because (a) the appellant is protected against any latent inequity because she may still be relieved of any imprudence by the Supreme Court, Westchester County, which still retains jurisdiction over the committee, and has the final supervision of the welfare of the incompetent; and (b) the instant action was commenced in the Supreme Court, New York County, in July 1967. Carrying forward this litigation will result in further erosion of the estate. " *Interest reipublicae ut sit finis litium.*"

MARKEWICH and LANE, JJ., concur with STEUER, J.; McGIVERN, J. P., dissents in an opinion; KUPFERMAN, J., dissents and votes to affirm on the opinion of the Surrogate.

Decree, Surrogate's Court, New York County, entered on February 15, 1973, reversed, on the law and on the facts, and the application denied, with $60 costs and disbursements to all parties filing separate briefs payable out of the estate.